UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AIRSTRUCTURES WORLDWIDE, LTD., et al. | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 4:09CV10 CDP<br>) |
| AIR STRUCTURES AMERICAN TECHNOLOGIES, INC., et al., | )<br>)<br>) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Plaintiffs and defendants are competitors in the air supported structures industry. Air supported structures are buildings made from a fabric envelope anchored to a concrete foundation, inflated by air handling units, and sometimes supported with cables. Plaintiffs AirStructures WorldWide (AWW) and Johnson Heater Corporation (referred to by the parties as JMI) manufacture and sell component parts for air supported structures. Plaintiffs Ron Scharf and his son Tim Scharf are owners, officers, and directors of AWW and JMI. Defendant Air Structures American Technologies, Incorparted (ASATI) sells air supported structures, but it purchases component parts and assembles them or ships them for assembly by others. Defendant Donato Fraioli was the Chief Executive

Officer of ASATI, and he and his family also own and control defendant Air Tech, which works with ASATI to assemble and sell air supported structures.

In Count I of their complaint, plaintiffs allege that defendant tortiously interfered with a May 3, 2005 contract between plaintiffs and a group of non-parties referred to collectively as the Kogan parties.[1]  The contract was an exclusive supply contract which required the Kogan parties to purchase from plaintiffs all the component parts for any air supported structures sold by the Kogan parties in the former Eastern Bloc, including Russia.  In April 2006, OOO (one of the Kogan parties) entered into a contract (State Contract #37) with an agency of the Russian government for the sale of 64 air supported structures for about 40 million dollars.  Under the terms of the May 3, 2005 contract between plaintiffs and the Kogan parties, the Kogan parties were required to purchase all of the air supported structures for State Contract #37 from plaintiffs.  Instead, they bought them from defendants.

Plaintiffs and the Kogan parties arbitrated their dispute over State Contract # 37 and the May 3, 2005 contract, which resulted in an award entered

---

[1]As used by the parties, the "Kogan parties" are Alexander Kogan, his son Phillip Kogan, IPD Sales & Marketing, LLC (IPD), and OOO Air Structures American Technologies and Investment (OOO), a wholly owned subsidiary of IPD formed under the laws of the Russian Federation.

in plaintiffs' favor for about 16.8 million dollars. Plaintiffs confirmed the award in state circuit court and obtained a judgment in their favor against the Kogan parties for the full amount of the award. The judgment was affirmed on appeal. Scharf v. Kogan, 285 S.W.3d 362 (Mo. Ct. App. 2009). The Kogan parties have not satisfied the judgment.

Plaintiffs allege that defendants induced the Kogan parties to breach the May 3, 2005 agreement through improper means. They seek as damages the full amount of the unsatisfied judgment. In their partial motion for summary judgment, defendants contend that plaintiffs waived their tortious interference claim against defendants by electing to proceed to judgment on their contract claim against the Kogan parties. Missouri law governs. Because material facts remain in dispute and preclude entry of judgment as a matter of law, summary judgment will be denied to defendants on Count I of the complaint. My analysis follows.

## **Legal Standards Governing Summary Judgment**

In considering a motion for summary judgment, the court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986). As the moving party, defendants must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." Putman v. Unity Health System, 348 F.3d 732, 733-34 (8th Cir. 2003) (internal quotation marks and citation omitted). A party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. Wilson v. Int'l Bus. Machs. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

"The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. 242 at 252; Davidson & Associates v. Jung, 422 F.3d 630, 638 (8th Cir. 2005). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact." Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Reed v. City of St. Charles, Missouri, 561 F.3d 788, 791-92 (8th Cir. 2009). Under these standards I review the facts in this case.

## Background Facts[2]

Plaintiffs allege that defendants caused the Kogan parties to breach their May 3, 2005 contract by inducing the Kogan parties to purchase the air supported structures for State Contract #37 from defendants instead of

---

[2] I am finding these facts for purposes of summary judgment only, and no party may rely upon any part of this Memorandum and Order for any claim or defense at trial.

plaintiffs. On April 12, 2006, plaintiffs filed a petition for breach of contract against the Kogan parties in the Circuit Court of St. Louis County, Missouri, Case Number 06CC-001479. In the state court action, plaintiffs alleged that the Kogan parties breached the May 3, 2005 contract by agreeing to purchase air supported structures to be sold in Russia from a competitor of plaintiffs. Plaintiffs sought only injunctive relief. Defendants were not named as parties to the lawsuit.

The state court entered a temporary restraining order on April 13, 2006 and set a preliminary injunction hearing for April 21, 2006. However, on that date plaintiffs and the Kogan parties announced a settlement on the record, and plaintiffs dismissed the case without prejudice. According to plaintiffs, the Kogan parties subsequently breached the terms of the settlement agreement but plaintiffs did not refile their state court lawsuit.

On May 17, 2006, the Kogan parties initiated arbitration proceedings by filing a Notice of Intent to Arbitrate with the American Arbitration Association. In their Notice of Intent to Arbitrate, the Kogan parties sought a declaration that the exclusivity provision of the May 3, 2005 contract was void. Plaintiffs argue that they filed a demand for arbitration on July 10, 2006 only in response to the

Kogan parties' Notice of Intent to Arbitrate and that they were required under the May 3, 2005 contract to arbitrate any claims against the Kogan parties for breach of the agreement. Plaintiffs' demand for arbitration sought recovery from the Kogan parties for their alleged breach of the May 3, 2005 contract.

Plaintiffs aver that, at the time they were arbitrating their dispute with the Kogan parties, they had no information indicating that defendants had knowledge of the May 3, 2005 contract. On November 6, 2006, in another lawsuit pending in the State of Florida filed by plaintiffs against a non-party, plaintiffs deposed defendant Fraioli and asked him if he was aware of the May 3, 2005 contract between plaintiffs and the Kogan parties. Fraioli answered, "No."

On August 10, 2007, the arbitrator entered an award against the Kogan parties. The arbitrator found that the Kogan parties breached the May 3, 2005 contract by not purchasing the air supported structures for State Contract #37 from plaintiffs and awarded plaintiffs $16,848,949.59 in damages. Plaintiffs obtained confirmation of the arbitration award in the Circuit Court of St. Louis County, Missouri (Case Number 2107CC-03653) and were awarded a judgment in their favor against the Kogan parties for the full amount of the award. The

judgment was affirmed on appeal. Scharf v. Kogan, 285 S.W.3d 362 (Mo. Ct. App. 2009). The Kogan parties have not satisfied the judgment.

**Discussion**

Defendants contend that plaintiffs are precluded from bringing their tortious interference claim because by confirming their arbitration award against the Kogan parties and obtaining a final judgment, plaintiffs waived their tort claim against these defendants. Defendants argue that the tortious interference claim seeks the same damages as in the state court case confirming the arbitration award against the Kogan parties. Defendants rely on the waiver of tort doctrine under Missouri law, applied by the Eighth Circuit Court of Appeals in KForce, Inc. v. Surrex Solutions Corp, 436 F.3d 981 (8th Cir. 2006).

Plaintiffs are attempting to pursue two separate and distinct causes of action: one against the Kogan parties for breach of the May 3, 2005 contract; and the other against defendants for tortiously interfering with that contract. "The two causes of action are against two defendants for two different wrongful acts and are based upon two different rules of law. As a result, [plaintiffs] may properly pursue both causes of action and the pursuit of one cause of action does not impair [their] right to pursue the other." Ross v. Holton, 640 S.W.2d

166, 172 (Mo. Ct. App. 1982) (citations omitted).

However, "it is well-settled in Missouri that a party cannot be compensated for the same injury twice." KForce, 436 F.3d at 981. "A party cannot be compensated for the same injury twice . . . whether the injury arises out of contract or tort." Norber v. Marcotte, 134 S.W.3d 651, 661 (Mo. Ct. App. 2004) (citations omitted). Although a plaintiff may proceed under a variety of theories of recovery, he cannot receive duplicative damages; "instead he . . . must establish a separate injury on each theory." Id. While it is true that the existence of a contract is an essential element of both a cause of action for breach of contract and tortious interference with contract, and "a single transaction may invade more than one right, a plaintiff may not be made more than whole or receive more than one full recovery for the same harm." Id. "In general, where a plaintiff can choose to proceed in tort or contract on a course of conduct involving two possible defendants and he chooses to proceed to a final judgment against one defendant in contract, he may not later attempt to pursue a tort action against the second defendant; the initial waiver of tort waived tort for all purposes." Perez v. Boatmen's National Bank of St. Louis, 788 S.W.2d 296, 299 (Mo. Ct. App. 1990).

Summary judgment must be denied because there are genuine factual disputes about whether plaintiffs waived tort by confirming their arbitration award against the Kogan parties. Plaintiffs contend that they did not know there were "two possible defendants" to proceed against at the time of the arbitration because they had no information indicating that defendants had knowledge of the May 3, 2005 contract. In fact, plaintiffs have presented evidence that, when viewed in light most favorable to plaintiffs, establishes that defendant Fraioli concealed his knowledge of the May 3, 2005 contract by testifying in November of 2006 -- while the arbitration proceeding was pending -- that he did not know about the agreement.[3] Defendants' knowledge of the May 3, 2005 contract between plaintiffs and the Kogan parties is an essential element of plaintiffs' tortious interference claim against defendants under Missouri law.[4] Because a rational finder of fact might well conclude that defendants concealed their knowledge of the contract from plaintiffs at the time of the arbitration, I simply

---

[3] According to the complaint, plaintiffs now believe that defendants did have knowledge of the May 3, 2005 contract "at or about the time it was executed as Kogan told Fraioli about it."

[4] To establish a claim for tortious interference with contract under Missouri law, plaintiffs must establish: "(1) a contract or valid business expectancy; (2) defendants' knowledge of the contract or relationship; (3) a breach induced or caused by defendants' intentional interference; (4) absence of justification; and (5) damages." Lyn-Flex West, Inc. v. Dieckhaus, 24 S.W.3d 693, 697-699 (Mo. Ct. App. 1999).

cannot decide as a matter of law that plaintiffs had a choice "to proceed in tort or contract on a course of conduct involving two possible defendants" at the time they confirmed their award and that they knowingly chose "to proceed to a final judgment against [the Kogan parties] in contract" only, such that they waived their right to bring their tort claim against defendants in this case. See id. Resolution of this issue will depend upon credibility determinations that cannot be made by me at this stage of the proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for partial summary judgment on Count I of plaintiffs' complaint [#38] is denied.

*Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of December, 2009.